# Lyon's Appeal.

1. An appeal from a preliminary injunction must be decided on the state of the case at the time of the decree.

2. A wife owned land subject to a mortgage, judgments were recovered against her husband, the creditors alleged the land belonged to him. The creditors bought the mortgage and issued execution on it, for the purpose of securing the judgment. On application in equity, the court enjoined the creditors from proceeding until they should execute an assignment to the wife on her payment of debt, interest, costs, &c., of the mortgage.

3. The party had a right at law to execution on the mortgage, but equity will look at the use to be made of the power and if it be aside from the legal right to have satisfaction, will restrain the improper use.

4. The whole right of the party is to receive the mortgage-money, process upon it is merely the means to obtain it.

5. If the purpose was to use the mortgage for collecting from the wife's property a debt due by the husband in a manner to cause irretrievable injury to the wife, equity will relieve on such terms as will enable the party to realize his mortgage-debt.

6. It is against law and equity to sell a wife's property for a debt of her husband, and the party will be restrained.

7. Equity regards the purpose and not the form.

February 11th and 12th 1869. Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ. READ, J., at Nisi Prius. SHARSWOOD, J., absent.

This was a certificate from Nisi Prius, No. 60, to January Term 1868. In Equity.

The proceeding was a bill filed February 27th 1868, by Joseph Wagner Jermon and Sarah Ann his wife in her right against Edward Lyon, Thomas Lyon and George W. Taylor, trading as Lyon & Taylor and Peter Lyle, sheriff.

The bill alleged that Mrs. Jermon was the owner of certain real estate at Broad and Oxford streets, Philadelphia, which had been conveyed to her in February 1865, subject to a mortgage dated April 13th 1861 given by former owner to the Reliance Insurance Company; that on the 20th of July 1865 the defendants recovered

a judgment for $11,300 against the firm of Jermon & Jones of which J. Wagner Jermon was a member, and that efforts had been made to compromise the judgment which had been unsuccessful; that in June 1867 the defendants purchased the mortgage from the Insurance Company; that the design of the defendants was to expose the premises worth $20,000 to sheriff's sale, knowing that Mrs. Jermon had not the means to protect them; they expected to purchase them at a small sum, and after deducting the amount of the mortgage to have the balance paid into court for distribution in which they would take part as creditors of J. Wagner Jermon; that for this purpose they had issued a levari facias on a judgment on the mortgage to January Term 1868, and the premises are advertised for sale on the first Monday in March; that not knowing the residence of the defendants, Mrs. Jermon tendered the amount of principal and interest due on the mortgage to the attorney of record of the defendants, and requested him to assign the mortgage to a person named to him; that she has since caused a tender to be made of principal, interest, costs, &c., to the defendants, and requested them to execute an assignment of the mortgage prepared and presented to them, which they refused: "that in consequence of the existence of the judgment against the said J. Wagner Jermon, which is an apparent but not an actual blot upon her title, this complainant is not possessed of sufficient property other than the premises, to satisfy the said mortgage-debt, and raise the necessary sum by the execution of a new mortgage."

The prayer was that the defendants be compelled to accept the money due on the mortgage, and execute an assignment of it, and that they be restrained from proceeding under their levari facias.

Affidavits were presented on both sides: those of the defendant averring that the premises were owned by the husband, and that no tender had been made.

On the 2d of March 1868 Mr. Justice Read at Nisi Prius decreed, "that the injunction be granted as prayed for, to restrain the sheriff's sale of the property mentioned and referred to in the bill, and that the said injunction do stand until the defendants, Lyon & Taylor, do execute an assignment of the bond and mortgage referred to in the bill, and a transfer of the suit brought upon the said mortgage, upon receiving payment of the debt and interest secured thereby, together with all costs, upon the execution of which assignment and transfer the said injunction shall be dissolved," &c.

An answer and replication were afterwards put in, and testimony was taken; but no further decree was made. On the 19th of December 1868 the defendants appealed from the decree granting the special injunction.

[Lyon's Appeal.]

*A. V. Parsons* and *W. L. Hirst*, for appellants, argued that there is no rule under which a court has power to compel a party to sell or transfer his property to another: Avey *v.* Petton, 7 Johns. Ch. R. 211; Gammon *v.* Stone, 1 Vesey, Senr. 339. This is not as the case of a surety: 1 Story's Eq. Jur. §§ 498, 499.

*W. F. Judson* and *G. W. Biddle* (with whom was *T. R. Elcock*), for appellees.—In England under statutes such assignments may be compelled: 7 Geo. II. chap. 20; Roberts' Dig. 355; Seton's Forms 364. The courts of Pennsylvania have recognised this power: Knorr *v.* Hocker, Sup. Ct. Dec. T. 1845, No. 2; McDowell *v.* Phipps, Dist. Ct. March T. 1860, No. 4; Howe *v.* Pennsylvania Co., Dist. Ct., Legal & Ins. Rep. July 15th 1863; Dudson *v.* Snare, Sup. Ct. July 2d 1868; Hunter's Appeal, 4 Wright 194; Mosier's Appeal, 6 P. F. Smith 76.

The opinion of the court was delivered, February 23d 1869, by
AGNEW, J.—This appeal must be decided upon the state of the case at the time of the decree granting the preliminary injunction. The answer filed afterwards is therefore not before us: Mining Co. *v.* Pottsville Water Co., 4 P. F. Smith 164. The plaintiff's bill is founded in the power to grant relief by restraining acts contrary to law and prejudicial to the interests of individuals, which has been construed to include acts contrary to equity: Stockdale *v.* Ullery, 1 Wright 486. The defendants have, at law, a right to execution of the judgment on the mortgage assigned to them, but equity will look at the use to be made of this power, and if it be aside from the legal right of the party to have satisfaction, will restrain the improper use intended to be made of it. But while compelling the party to act upon the maxim *sic utere tuo ut alienum non lædas*, equity follows the law so far that nothing shall be done inconsistent with his right. The whole right of the defendants is to receive the money secured by the mortgage, the mortgage and the process upon it being merely the means of obtaining it. If, therefore, the purpose of purchasing and prosecuting the mortgage was not for collection of the debt secured by it, but to use it as a means of collecting from the wife's property a debt against the husband, in a manner to cause irretrievable injury to the wife, equity will afford relief on terms such as will enable the defendants to realize their debt. In substance the complaint is that the defendants bought the mortgage and are prosecuting it, not merely for the real purpose of collecting the debt secured by it, but of using it to destroy Mrs. Jermon's title by a sale, in order to facilitate the design of collecting a judgment against her husband out of this property. That she has no means of her own except this property, and that the effect of their proceeding is to prevent her from mortgaging it to raise money to

11 P. F. SMITH—2

pay off the debt. This effect is obvious, the defendants having a judgment of $11,300 against her husband, and denying her ownership, and asserting the husband's title to the property. Being a married woman under disability to make contracts, she is placed just in the position, that if the mortgage be prosecuted to execution with this cloud on her title, a property averred to be worth $20,000 will be exposed to the risks and sacrifice of a sheriff's sale, and her interests irremediably injured. She is willing and offers to pay them their debt on their assigning the mortgage, this being the only way in which she can raise the money. She probably can find persons willing to advance the money on the undoubted security of this mortgage, who would be unwilling to take a new mortgage and run the risk of the assaults of the defendants upon the property, under their judgment against the husband. The defendants refuse to receive their money and make an assignment, claiming that it is their right to buy and use the mortgage for the purpose of selling out the wife's title and to bring the money into court for distribution, where they can come in upon it as the creditors of her husband. But clearly it is contrary to equity and indeed contrary to law to sell a wife's property for the debt of her husband, and the party will be restrained: Hunter's Appeal, 4 Wright 194. And to give a party an undue advantage over a wife who cannot protect herself, so as to enable him to collect his debt against her husband by putting her title to a sheriff's sale, when she is willing to pay the encumbrance against her own title, is against equity. It is as contrary to good morals as it is against justice. Equity regards the purpose and not the form. In form the defendants are proceeding to collect a mortgage against her estate, but in fact they are proceeding to divest her title to gain an advantage over her by compelling her to come into court and contest their right in a question of distribution. Having no means she cannot be their competitor at the sheriff's sale, and the property, if sacrificed, will produce less for distribution, while, if they can purchase it for a small sum, by reason of the accidents of a sheriff's sale, they obtain an advantage in the price. All they can demand at law or in equity is the money. This they are entitled to, but nothing more; and this they can obtain on assigning the mortgage without recourse or guarantee. It is true they aver fraud, and that the property belongs to the husband and not to the wife. They are at liberty to levy on it as his, upon their own judgment, and sell, and thus test the title. She can then meet them fairly with her own title, and justice will be done. But clearly it is against equity that they should use an admitted encumbrance against her title, which she is willing to pay off, merely for the purpose of gaining an advantage by the sale, and in the subsequent contest over the fund in court. We do not mean to be understood as deciding that in

an ordinary case of conflict of interests a party can come into equity and restrain a plaintiff from his right of execution of his judgment. It is only because of the peculiar circumstances of this case where the real purpose is not rightful but ulterior; where the party to be protected is under disability; and where the plaintiff in the judgment can be protected in his legal right of satisfaction, by payment to him, on terms not prejudicial to his interests.

The decree of the Court of Nisi Prius is therefore affirmed and a *procedendo* awarded.